This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**ERNESTINE ESPARZA,**

    Petitioner-Appellee,

v.                                 **NO. 33,222**

**FRANK ESPARZA,**

    Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

Fuentes Law Office, P.C.
Robert R. Fuentes
Rio Rancho, NM

for Appellee

Carter & Valle Law Firm, P.C.
Linda L. Ellison
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     This appeal stems from a divorce proceeding. Husband argues that the district court abused its discretion in dividing various items of community property, including a retirement account derived from his employment with the State of New Mexico. We conclude that there was no abuse of discretion and affirm.

**BACKGROUND**

{2}     Frank Esparza (Husband) and Ernestine Esparza (Wife) were married on November 27, 1981. Approximately twenty-eight years later, Wife filed a petition seeking dissolution of the marriage. A trial was held to determine how the marital property would be divided, after which the district court found, in relevant part for purposes of this appeal, that: (1) Husband accrued 32.395 hours of annual leave which amounted to a value of approximately $790; (2) Husband earned a Public Employee Retirement Association (PERA) account during the marriage; (3) Husband's Chase credit card held approximate balances of $3,000 prior to the filing of the divorce petition and $10,800 a little over a year later; (4) Wife earned $8,340 in additional income that had not been shared with the marital community; and (5) Husband has a "Deferred Compensation 457 Account" valued at $33,443, of which $5,000 was his separate property gift from his mother. To equalize the division of assets and

liabilities, the district court's conclusions of law required, among other things, that: (1) Husband retain his accrued and unused annual leave; (2) Husband select Option B as the form of payment of his PERA account pursuant to NMSA 1978, § 10-11-117(B) (1997) and designate Wife as the survivor beneficiary[1]; (3) Husband pay the Chase credit card debt, including the community debt that preceded the filing of the divorce petition and his ensuing separate debt; (4) Husband keep household goods and furnishings valued at $8,000; (5) Husband pay Wife "transitional spousal support" in the necessary monthly amount of $500 for three years, subject to modification; (6) Husband receive half of the sum of additional income that had previously been earned by Wife, less $779 owed to Wife as interim support payments for which Husband was in arrears; (7) Husband's deferred compensation, valued as of the date of divorce, less his $5000 pre-existing separate property interest, would be divided pursuant to a Qualified Domestic Relations Order; and (8) to complete the equalizing process following the ordered division of community assets and liabilities, Husband owed Wife $2,375 within thirty days of the Final Decree of Dissolution of Marriage.

{3}     Including those set forth above, the district court's findings of fact and conclusions of law were memorialized in the fourteen-page order from which

---

[1]Option B consists of "[l]ife payments with full continuation to one survivor beneficiary." Section 10-11-117(B). Under this option, the "retired member is paid a reduced pension for life." *Id*. Upon the death of the retired member, "the designated survivor beneficiary is paid the full amount of the reduced pension until death." *Id*.

Husband appeals. Because this is a memorandum opinion and the parties are familiar with the background of the case, we reserve discussion of more specific facts when pertinent to our legal analysis.

**Husband's Annual Leave**

{4}     Husband argues that the district court abused its discretion by awarding him his own undivided annual leave, valued at $790, because the issue was neither raised by the parties nor addressed during trial testimony. Therefore, Husband contends the issue was one upon which the district court lacked authority to rule. Wife counters that like other assets, Husband's annual leave was properly before the district court pursuant to the overarching trial inquiry aimed to equalize the division of community property. *See Arnold v. Arnold*, 2003-NMCA-114, ¶ 17, 134 N.M. 381, 77 P.3d 285 (holding that annual or vacation leave and sick leave constitute community property). Both litigants agree that we review issues regarding the equitable division of community assets and liabilities for an abuse of discretion. *See id*. ¶ 6 (recognizing same). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

{5}     Despite Husband's insistence that this issue was not before the district court, a pay stub admitted at trial and discussed during oral argument reflected the quantity

4

of Husband's accrued annual leave. The exhibit is excluded from the record proper. *See Brown v. Trujillo*, 2004-NMCA-040, ¶ 34, 135 N.M. 365, 88 P.3d 881 (stating that the appellant bears the burden of providing a sufficient record upon which the issues presented on appeal are rendered suitable for review). While neither litigant submitted proposed findings of fact or conclusions of law regarding Husband's annual leave, based on the evidence before it the district court was able to observe and calculate its quantity and value, finding that 32.395 hours, worth about $790, existed. Within its division of assets, the district court ordered that Husband "shall retain all of his accrued and unused annual [and vacation] leave." In moving to reconsider, Husband argued that "sick and annual leave . . . is likely to have been earned post separation and should be awarded to [Husband]." Despite his request then, Husband now argues that the district court's distribution of the annual leave to him was error, adding that its value was next improperly factored into Husband's equalization payment.

{6}     If it was error for the district court to distribute the annual leave to Husband, it was both invited and ultimately capitulated to by virtue of Husband's motion for reconsideration, in which he sought to keep his annual leave—the very same distribution initially ordered by the district court and, as requested, maintained by it

5

following a hearing on the motion to reconsider.[2] Furthermore, the district court was entitled to rely on Husband's agreement with its ruling awarding him his own annual leave. *See Cox v. Cox*, 1989-NMCA-035, ¶ 22, 108 N.M. 598, 775 P.2d 1315 (holding that a district court may rely on a party's proposed property distribution in reaching its decision). "[I]nvited error will not be the basis for reversal on appeal." *Id.* (citing *Proper v. Mowry*, 1977-NMCA-080, ¶ 70, 90 N.M. 710, 568 P.2d 236). As well, Husband provides no cited authority stating that the district court cannot make determinations regarding community property evident on the face of trial exhibits unless supported by testimony or written pleadings. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Similarly, Husband asserts the ruling regarding his annual leave to be somehow afoul of the "'first in first out' " principle, yet offers no citation regarding the principle's meaning or from what source of authority it arises. We affirm the decision of the district court regarding Husband's annual leave.

**Husband's PERA Retirement Account**

---

[2]In its order on Husband's motion to reconsider, the district court denied all matters raised in the motion with the exception of a few expressly stated issues. Because the district court stated no modification to its initial ruling regarding Husband's annual leave, we understand that the district court maintained its original ruling on the matter.

{7}    Husband argues that the district court erred in: (1) neglecting to allocate the cost of the court ordered PERA survivor benefits to Wife since she requested them, (2) ordering Husband to elect Option B, which includes the survivor benefit here payable to Wife as also directed by the court, and (3) wording the final divorce decree contrary to a prior oral ruling. Husband maintains that the question of survivor benefits is one of first impression and asks us to review the application of PERA de novo as a matter of statutory interpretation. Wife maintains that abuse of discretion is again the appropriate standard of review. She also asserts that Husband did not sustain his appellate burden insofar as he failed to adequately argue the point of appeal and to provide specific citations to the record, along with an accompanying explanation of how the district court abused its discretion in ordering the selection of Option B, or in not adhering to its own prior spoken language following trial.

{8}    At the outset, we disagree with Husband's contention that this Court should review these issues de novo as a matter of statutory interpretation. Husband provides no specific discussion regarding the statute, the legislative intent of the statute, or how the statute was misapplied by the district court. Nor does he argue that the result he prefers today is that which PERA contemplated in circumstances such as this. Indeed, Husband's argument is one of inequity—that the district court's decision to order Husband to select Option B, and moreover to have done so without requiring Wife to

pay the cost of survivor benefits, was unjust. Such an argument does not entail statutory interpretation, nor does it trigger de novo review. Rather, we review the district court's PERA-related conclusions for an abuse of discretion. *See Clark v. Clark*, 2014-NMCA-030, ¶ 24, 320 P.3d 991 ("We review the district court's equitable distribution of assets and liabilities for an abuse of discretion.").

{9}     In examining Husband's briefing, we can find no specific discussion related to, or argument describing, why it was error for the district court to employ its discretion to require survivor benefits to Wife or to not separately assign her the responsibility of making the accompanying payment that PERA Option B entails. Husband merely offers a few sentences that generally assert that "[i]t is not equitable that [Husband] pay for these benefits in any way[,]" and Wife's "50% of the community percentage of the community retirement should be reduced to a lower percentage . . . to allocate for such cost of receivership." Husband cites no caselaw supporting these statements, nor any statutorily analytic justification for the conclusion he asks us to reach. We will not second guess a district court's use of its discretion on the basis of such overly general complaints. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104.

{10}     Regarding the requirement that he select Option B, Husband contends that PERA provides "better options available to the parties, such as Option C[,] . . . a more

cost effective alternative to both parties." Yet Husband fails to direct us to any portion of the record where he asked the district court for that which he now requests on appeal—specifically, PERA Option C. In his proposed findings and conclusions, Husband "did not agree" with Wife's request for Option B, but asked instead that "Option A . . . be selected which does not provide for any survivor beneficiary pay out annuity." After the district court ordered Husband to select Option B pursuant to Wife's request, Husband expressed his displeasure by merely asking the court to "reconsider its ruling on the PERA retirement[,]" a request unaccompanied by indication that he then preferred Option C, instead of Option A. We can find nothing regarding, nor does Husband cite, any mention of Option C in the district court proceedings.[3]

{11} To present an appellate issue that is suitable for resolution, an appellant must demonstrate that the issue was preserved in the trial court. *See* Rule 12-213(A)(4) NMRA. "To preserve error for review, a party must fairly invoke a ruling of the district court on the same grounds argued in this Court." *Crutchfield v. N.M. Dep't of Taxation and Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273. Here, Husband has not identified when, and appears nowhere to have stated, his evolved

---

[3]Pursuant to Option C, "[t]he retired member is paid a reduced pension for life[, and w]hen the retired member dies, the designated survivor beneficiary is paid one-half the amount of the reduced pension until death." Section 10-11-117(C).

preference for Option C. Thus, we are in no position to conclude that the district court abused its discretion by not ordering the selection of Option C. *See id.* (denying consideration of an issue on appeal where the appellant did not invoke the ruling of the district court or otherwise adequately preserve the issue for appellate review).

{12}    To the extent Husband argues that the selection of Option B itself was an abuse of discretion, we note first that Husband's PERA account was earned during the marriage, from 1992 until at least the time of dissolution. It is plain from our caselaw that the non-earning spouse possesses a community interest in such a retirement account's value. *See Irwin v. Irwin*, 1996-NMCA-007, 121 N.M. 266, 910 P.2d 342, ¶ 20 ("A community interest in a pension plan containing a survivor's benefit provision constitutes a valuable portion of the community assets, and the survivor's benefit provision should be considered in valuing and distributing the community interest in the retirement plan."). Although *Irwin* primarily addressed division of a fully vested retirement account, *id.* ¶ 22, it held that "where an employee-spouse has a choice of pension options, he or she should not be permitted by the choice . . . to defeat or reduce the interest of the non-employee spouse." *Id.* ¶ 21. By asking the district court to select Option A, the option which excludes survivor benefits, Husband essentially sought that which is disallowed by *Irwin*. Here, the district court considered both the possibility that Husband would discontinue his state service prior

to retirement, or that he would fully retire from state service, and assigned divided value percentages for both scenarios. Next, the court directed Husband's selection of Option B, which safeguarded Wife's interest in the community PERA asset. Given Husband's failure to have offered any viable alternative to the district court and then to persist in such an assertion on appeal, and in light of our precedent's recognition of the community value of the very interest here protected by the district court, we have no basis to conclude that the district court abused its discretion in allocating Husband's PERA account.

{13}     Lastly, Husband fails as well to specify precisely why it is reversible error for any difference to exist between the district court's final orders and its previous oral rulings. While Husband notes what he contends to be contradictions between the district court's statements following trial and its final order dividing the retirement benefits, he does not explain how any of these differences constitute an abuse of discretion, nor does he ever even notify us specifically as to what those substantive differences were. Such assertions, unsupported by authority or argument, are unpersuasive. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 ("[T]his Court has no duty to review an argument that is not adequately developed.").

**Husband's Chase Credit Card Debt**

{14}     Prior to district court litigation, a special commissioner held a hearing to address certain core matters, including Husband's payment to Wife of interim support. At the time, the commissioner additionally considered Husband's credit card debt, then containing a $5,000 retainer to his attorney, and determined that "legal fees [were] appropriately included" in the interim division. In its later findings and conclusions, the district court found that when the divorce petition was filed, Husband's Chase credit card had a balance of approximately $3,000, which constituted community debt. The court additionally found that a little over a year later, the credit card balance was approximately $10,800, and that Husband "failed to show that the new debt (i.e. approximately $7,800) benefitted both spouses." The court assigned the credit card debt "in excess of $3,000" to Husband as separate debt. Although it found the $3,000 to be community debt, in equalizing the division of assets it ordered Husband to pay it "as his sole and separate debt." In Husband's motion to reconsider, he cited the interim order in conjunction with his argument that attorney fees are community debt. By reply to his motion, Husband additionally requested his attorney fees and costs. The district court denied both requests.

{15}     Husband alleges that the district court abused its discretion by failing to designate all of the Chase credit card debt and accompanying interest as community debt. Husband contends that because the majority of the debt consisted of Husband's

12

attorney fees, which were allowed as necessary expenses in the interim order, substantial evidence does not support the district court's findings and conclusions, which required Husband to pay the entirety of the credit card debt. Husband also argues that the district court erred by failing to divide the pre-divorce credit card balance of $3,000 equally between the parties. Husband states that $5,000 of the post-divorce petition debt is attributable to a retainer for his attorney, but acknowledges that the remainder is attributable to later attorney fees and his own dental bills.

{16} Wife maintains that the district court did not abuse its discretion as the interim order of the special commission was merely a temporary distribution pending the final order of the district court. Additionally, Wife contends that the district court did not err in ordering that Husband be responsible for the credit card debt incurred after the filing of the divorce petition as Husband acknowledges that the debt consisted of his later attorney fees and his dental bills. In support of this argument, Wife directs us to a district court order ruling that each party bear his or her own costs and attorney fees.

{17} As we have stated, we review a district court's decision of distribution of assets and liabilities for an abuse of discretion. *Clark*, 2014-NMCA-030, ¶ 24. While Husband argues that the district court abused its discretion because the interim order put in place by the special commission served as "the law of the case" and established the community nature of the credit card balance, including Husband's $5,000 retainer,

13

he provides no authority in support of this contention. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). In fact, the special commissioner's order expressly indicated that the parties "are to follow [the] recommendations until further order of the [district c]ourt." In just such a later order, the district court denied Husband's requests.

{18}     To the extent that Husband contends that his attorney fees and dental bills were community debt, defined as "debt contracted or incurred by either or both spouses during marriage which is not a separate debt[,]" NMSA 1978, § 40-3-9(B) (1983), Husband points us to nothing within the record, nor can we locate, any documentation about how or when these debts were incurred, who charged them, nor have we located any documents or exhibits detailing the debts incurred, who charged them, when, and for how much. While Husband does provide us with citations to the hearing, his citations are faulty as they do not correspond with the provided record proper disks. Without more than a mere assertion of error by counsel, particularly one unaccompanied by supportive caselaw or specific argument, we cannot conclude that the district court's decision ordering Husband to pay the entire credit card debt was

14

not supported by substantial evidence. *See Gonzales*, 2011-NMCA-007, ¶ 19 ("[T]his Court has no duty to review an argument that is not adequately developed.").

**{19}** As well, we reiterate that it is the district court's responsibility to equalize the division of assets and liabilities, particularly given that not all things are perfectly suited to division. Although not exactly described, the process by which the district court equalized assets yielded significant items of community value to Husband, such as the household goods and furnishings, as well as to Wife. After the process of division, the district court concluded its order with a final equalization payment from Husband to Wife. We cannot assume the presence of error on the basis that each and every asset was not specifically and equally divided. *See Irwin*, 1996-NMCA-007, ¶ 10 (stating that under New Mexico law, in divorce proceedings district courts are required to divide community property equally; however, the division "need not be computed with mathematical exactness.").

**Spousal Support**

**{20}** Husband argues that the district court abused its discretion when it awarded Wife educational spousal support and in failing to set forth specific terms of the termination of the support, the modification of the support, and the applicable tax implications. Wife contends that the district court ruled appropriately as it considered disparity in income and the earning ability of the litigants. We review the award or

15

denial of spousal support for an abuse of discretion. *Hertz v. Hertz*, 1983-NMSC-004, ¶ 20, 99 N.M. 320, 657 P.2d 1169.

{21}    In a divorce proceeding, the Legislature has granted district courts authority to award a party:

> (a)    *rehabilitative* spousal support that provides the receiving spouse with education, training, work experience or other forms of rehabilitation that increases the receiving spouse's ability to earn income and become self-supporting. The court may include a specific rehabilitation plan with its award of rehabilitative spousal support and may condition continuation of the support upon compliance with that plan [or]

> (b)    *transitional* spousal support to supplement the income of the receiving spouse for a limited period of time; provided that the period shall be clearly stated in the courts final order[.]

NMSA 1978, § 40-4-7(B)(1)(a),(b) (1997) (Emphasis added.) In determining whether an award of spousal support is appropriate under the circumstances, the district court must consider the: (1) age, health, and means of support for each spouse; (2) current and future earnings and the earning capacity of each spouse; (3) good-faith efforts of each spouse to maintain employment or to become self-supporting; (4) the reasonable needs of the each spouse, including the standard of living during the marriage, maintenance of medical insurance for each spouse, and appropriateness of life insurance, its availability and cost, and its necessity for the individual paying spousal support; (5) duration of the marriage; (6) amount of property awarded to each spouse;

(7) type and nature of the each spouse's assets; (8) type and nature of each spouse's liabilities; (9) income producing property owned; and (10) agreements made by the spouses in contemplation of the dissolution of marriage or legal separation. Section 40-4-7 (E).

{22} The district court concluded that Wife was "in need of transitional spousal support" and ordered Husband to pay her "$500 per month beginning June 1, 2011 and continuing through June 2014." The district court noted that the "award of spousal support [was] modifiable." Husband argues that "despite the [transitional] label," due to oral rulings of the district court referencing educational reasoning, the support was "more in the nature of rehabilitative spousal support for which there was not substantial evidence other than the fact that [Husband] earned more than [Wife]." While Husband cites to portions of the hearing purporting to discuss the educational intent of the spousal support, the citations again do not properly correspond to the recorded hearing disk, and we are unable to locate the specific testimony Husband refers to. However, our review of the district court's findings and conclusions reveal that it made findings regarding each of the statutorily required considerations pertinent to transitional spousal support, with the exception of whether an agreement existed between the parties made in contemplation of separation or dissolution of the

marriage. As to the latter, the parties make no argument that such an agreement existed.

{23} The district court ultimately awarded Wife transitional support and explicitly prescribed a duration on the support as required by Section 40-4-7(1)(b). While Husband contends that the district court abused its discretion in this determination, he provides no argument particularizing his reasoning aside from a generic statement that there was not substantial evidence to support the ruling. Nothing indicates, as Husband suggests, that the amount ordered was solely to facilitate Wife's education. Given the district court's consideration of all of the Section 40-4-7(E) statutory factors, with the exception of the tenth which Husband does not dispute on appeal, our standard of review dictates that we affirm the support award of spousal support to Wife.

**Interim Division Payment**

{24} Husband next argues that the district court abused its discretion in subtracting $779 from his half of the distribution of Wife's additional income as Husband contends he previously paid Wife the disputed $779. He asserts that the district court abused its discretion by ordering that "the $779 was to be paid by" a specific date which preceded the district court's findings and conclusions. Husband maintains as well that substantial evidence does not support the offset. Wife merely contends that

Husband is "confusing two different matters[:]" the interim division payment and Wife's excess income.

{25} In its findings and conclusions, the district court found that Husband "admitted that he had failed to make all interim payments to [Wife] and there is now the sum of $779 due." The district court ruled that the $779 be deducted from a portion of money Wife owed husband. In his motion to reconsider the ruling of the district court, Husband stated that he "paid interim division arrears of $779." The district court denied Husband's motion with regard to this matter. We note that there are no exhibits attached to the motion supporting Husband's assertion of payment, nor does Husband direct us to any evidence, aside from his own assertion, that the money was in fact paid. Without such evidence, we cannot conclude that the district court abused its discretion. *See Talley v. Talley*, 1993-NMCA-003, ¶ 12, 115 N.M. 89, 847 P.2d 323 ("When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion.").

**Wife's Additional Income**

{26} In its findings and conclusions, the district court awarded Husband half of the sum of excess income received by Wife. Husband contends on appeal that the district court abused its discretion by failing to provide a statement of when and how these funds would be paid to Husband. Husband additionally argues that there was no

19

"substantial evidence supporting . . . why this amount was not due to" Husband by a certain date. Finally, Husband complains that Wife was awarded one of her own accounts and was not required to divide it with Husband. Wife argues that Husband neglects to show where he filed a motion to recover the funds or provided an argument as to how the district court's division of property was an abuse of discretion.

{27}     At the outset, we note that we cannot locate where Husband requested the district court to clarify "when and how" Husband's half of the excess income was to be distributed. While Husband cites to a portion of the hearing where he claims he specifically addressed "a claim for recovery of the additional income[,]" Husband does not explain what he specifically requested and, again due to the inaccuracy of the recording citation, we cannot review it ourselves. *See Crutchfield*, 2005-NMCA-022, ¶ 14 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue."). Additionally, Husband fails to cite to any supportive caselaw that indicates a district court's lack of clarity in the disbursement of community income to be error. *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that the appellate court will not consider arguments that contain no citation to supporting authority). Insofar as Husband asserts that the district court abused its discretion in

awarding Wife more than her equitable portion of the community property, Husband fails to direct us to a portion of the record indicating the equalization of property to be mistaken. While Husband points us to exhibits in the record that he contends support his argument, we are unable to locate these exhibits as they do not appear to have been submitted as part of the record proper. *See Brown*, 2004-NMCA-040, ¶ 34 (stating that the appellant has the burden of providing a sufficient record to review the issues presented on appeal). Accordingly, we find no abuse of discretion.

**Husband's Deferred Compensation**

{28}	Lastly, Husband claims he does not understand with exactitude how the district court divided his deferred compensation. This is the extent of Husband's argument. He requests "clarifying language." This argument is undeveloped and we decline to review it. *See Gonzales*, 2011-NMCA-007, ¶ 19. We do note that the district court's order directly stated that "[f]ive thousand dollars of the funds in the 457 account are [Husband's] separate property . . . [and t]he remaining funds . . . are community property." Having found this language to be inexact, the appropriate recourse for Husband would have been to file a motion to clarify with the district court. While we note that in his motion for reconsideration Husband asked the district court to "review the calculations regarding" the deferred compensation, we can find nothing in the record, nor does he provide any citation to the record, indicating that he brought the

21

specific issues he now raises on appeal to the attention of the district court. *See Crutchfield*, 2005-NMCA-022, ¶ 14. Therefore, we decline to address this issue any further. *See Muse*, 2009-NMCA-003, ¶ 72, (refusing to reverse the district court in the dissolution of a marriage where the husband solely made "surface presentations" of his arguments).

**CONCLUSION**

{29}    For the foregoing reasons, we determine there to be no abuse of discretion and affirm the judgment of the district court.

{30}    **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Chief Judge**


_____
**CYNTHIA A. FRY, Judge**